[Cite as *In re M.K.*, 2023-Ohio-3786.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN RE: M.K.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 23CA000017

O P I N I O N


CHARACTER OF PROCEEDINGS: Appeal from the Guernsey County Court of Common Pleas, Juvenile Division, Case No. 19JC00406

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: October 18, 2023


APPEARANCES:

Counsel for K.R.

RICHARD HIXON
3808 James Court – Suite #2
Zanesville, Ohio 43701

Counsel for Guernsey Co.
Children Services

MELISSA M. WILSON
274 Highland Avenue
Cambridge, Ohio 43725

GUARDIAN AD LITEM

ANDREW WARHOLA
110 North 7th Street
Cambridge, Ohio 43725

Counsel for M.K.

CHANDRA ONTKO
665 Southgate Parkway
Cambridge, Ohio 43725

Guernsey County CASA

CASA/GAL
801 Wheeling Avenue
Cambridge, Ohio 43725

Counsel for J.K.

ADAM JOHNSON
25 East Waterloo Street
Canal Winchester, Ohio 43110

*Hoffman, P.J.*

**{¶1}** Appellant K.R. ("Mother") appeals the May 25, 2023 Journal Entry entered by the Guernsey County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her minor child ("the Child") and placed the Child in the permanent custody of appellee Guernsey County Children Services ("GCCS").

STATEMENT OF THE CASE AND FACTS

**{¶2}** Mother and J.K. ("Father") are the biological parents of the Child.[1]  Mother has two other children ("Sibling 1," "Sibling 2," individually; "the Siblings," collectively). The Siblings have two different fathers.

**{¶3}** The Child and the Siblings were in the temporary custody of GCCS from June 22, 2018, through November 2, 2018, due to Mother's drug use. On October 28, 2019, after GCCS filed a motion for emergency temporary custody, the trial court issued an ex parte order of custody of the Child and the Siblings, effective October 25, 2019. Also, on October 28, 2019, GCCS filed a complaint alleging the Child and the Siblings were abused, neglected, and dependent children.  The complaint was filed after GCCS received a report Mother and Sibling 1 were involved in a physical altercation.  Sibling 1 sustained two black eyes and scratches on her face as a result. Law enforcement responded to the home.  Mother was subsequently arrested and charged with domestic violence.  Mother tested positive for methamphetamines and benzodiazepines at the time of her arrest.

**{¶4}** The trial court conducted a probable cause hearing on October 28, 2019, and continued the Child and the Siblings in the temporary custody of GCCS.  Via

---

[1] Father is not a party to this appeal.

Judgment Entry filed October 29, 2019, the trial court appointed Attorney Andrew Warhola as guardian ad litem ("GAL") for the Child and the Siblings. Via Judgment Entry also filed October 29, 2019, the trial court appointed Attorney Chandra Ontko as counsel for the Child and the Siblings.

{¶5} On January 22, 2020, Mother filed a written stipulation, stipulating the Child and the Siblings were dependent. Mother, who was incarcerated at Guernsey County Jail, waived her appearance at the adjudicatory and dispositional hearings. The trial court conducted adjudicatory and dispositional hearings on January 23, 2020, and found the Child and the Siblings to be dependent children. Via Judgment Entry filed May 21, 2020, the trial court granted GCCS's motion for no reasonable efforts for Mother. The trial court found Mother had been incarcerated since October, 2019, and her 80% date was August 12, 2022, and her full-term date was October 24, 2022; therefore, Mother was unable to work on her case plan.

{¶6} On April 6, 2021, GCCS filed a motion for legal custody, moving the trial court to grant legal custody of the Child and the Siblings to Sibling 2's paternal grandmother, E.S. The trial court conducted a hearing on the motion on April 15, 2021. Via Journal Entry filed April 16, 2021, the trial court ordered GCCS's temporary custody be terminated and legal custody of the Child and the Siblings be granted to E.S.

{¶7} On September 1, 2021, GCCS filed a motion for emergency temporary custody of the Child and the Siblings as E.S. advised the Agency she does not feel she can care for the Child and the Siblings any longer. Via Journal Entry filed September 1, 2021, the trial court issued an ex parte order of custody of the Child and the Siblings to GCCS. Via Journal Entry filed September 9, 2021, the trial court found probable cause to

believe the Child and the Siblings were dependent. The trial court ordered temporary custody of Sibling 2 be terminated with GCCS and Sibling 2 be returned to the custody of E.S. The trial court further ordered the Child and Sibling 1 remain in the temporary custody of GCCS. Sibling 1 emancipated in May, 2022, and the trial court terminated GCCS's temporary custody.

{¶8} GCCS filed a motion to modify dispositional orders to permanent custody on January 11, 2023. The trial court conducted a hearing on GCCS's motion on May 11, 2023.

{¶9} Alicia Mallet, the ongoing GCCS caseworker assigned to the case, testified GCCS originally became involved with the family due to concerns about Mother's drug and alcohol use as well as concerns about domestic violence between Mother and the Child's stepfather. Mallet stated GCCS had been involved with the family since 2018, and received custody of the Child and the Siblings on October 25, 2019. Mallet noted GCCS has been involved continually since that time.

{¶10} The Child and the Siblings were placed with E.S. in April, 2021. In September, 2021, E.S. contacted GCCS and advised the Agency she was no longer willing to care for the Child and Sibling 1 due to behavioral issues. Sibling 1 emancipated from the Agency's custody in May, 2022.

{¶11} Mother's case plan required her to engage in mental health services, undergo drug and alcohol treatment, and follow all recommendations of her providers. In addition, Mother was to complete drug screens as requested by the Agency and/or her providers; complete a parenting course; sign releases of information; maintain contact with GCCS; and obtain and maintain stable house and income. Mallet explained,

throughout GCCS's involvement, Mother had a pattern of illegal substance use. GCCS also had concerns Mother had some mental health issues which might be contributing to her drug and alcohol use. Mother reported she had started services at Eagle Works in Byesville, but Mallet was unable to confirm Mother's claim. Mother received drug and alcohol treatment during her incarceration at Guernsey County Jail.

**{¶12}** Mallet indicated Mother had been incarcerated "off and on" throughout the pendency of the matter at the Ohio Reformatory for Women in Marysville, Ohio, the Guernsey County Jail, and the Crawford County Jail. The charges against Mother included theft and aggravated possession of drugs. At the time of the hearing, Mother was incarcerated in the Guernsey County Jail on a pending felony theft charge and a misdemeanor aggravated menacing had been recently filed against her in municipal court. Mother tested positive for amphetamine and methamphetamine on June 22, 2018; positive for buprenorphine and norbuprenorphine on July 12, 2018; positive for buprenorphine on July 13, 2018; positive for marijuana and buprenorphine on July 24, 2018; positive for buprenorphine on September 5, 2018, September 27, 2018, October 10, 2018, December 12, 2018, December 27, 2018, February 20, 2019, March 1, 2019, and March 12, 2019. On July 12, 2022, Mother tested negative for all substances. Mother refused to submit to a drug screen in September, 2022.

**{¶13}** The week prior to the hearing, Mother advised Mallet she planned to live in a trailer in Cambridge, Ohio, after she was released from Guernsey County Jail. However, it was not clear whether Mother would receive another prison term on the pending felony charge. Mother's last visit with the Child was December 31, 2022.

**{¶14}** Mallet testified the Child was doing well overall in foster care. The Child was doing well academically. The Child enjoyed art class and was very artistic. The Child was involved in the middle school band. The Child does not like to be corrected when she does something wrong or breaks a house rule, but Mallet reiterated the Child had done well. The Child was charged with receiving stolen property in Muskingum County Juvenile Court, and was placed in a diversion program. The Child has visitation with Sibling 1. The Child and Sibling 1 also speak on the telephone. The Child has not had any contact with Sibling 2 as E.S. had not allowed visitation.

**{¶15}** When asked about kinship options, Mallet indicated GCCS had not be able to locate any suitable relative to take the Child. The Agency investigated Mother's cousin and Sibling 1 as potential kinship caregivers. Mother's cousin tested positive for drugs. In addition, a household member of the cousin's daughter had a criminal history. The home studies of Mother's cousin and Sibling 1 were both denied.

**{¶16}** Mallet met with Father while he was incarcerated at the Guernsey County Jail. Father told Mallet he did not know the Child was his child until the Child was nine years old. Father had only met the Child a couple of times. Father admitted he was not in a position to seek custody or placement of the Child. Father did not have appropriate housing and struggled with addiction. Father had not had any contact with the Child. Father informed Mallet no one in his family would be appropriate to care for the Child.

**{¶17}** Mother admitted to Mallet she continued to struggle with addiction. Mallet expressed concerns about Mother's ability to obtain and maintain sobriety. Mother's criminal history had left her unavailable to parent the Child.

**{¶18}** Mallet indicated GCCS believes permanent custody was in the Child's best interest. Mallet explained the Child did not have a parent who was available to care for her. The Child had been in the Agency's custody for almost two years. The Child also had been in foster care on two prior occasions as well as with relative placement. Mallet stated the Child needed and wanted permanency. The Child wished to be adopted and have a family who would be there for her, lover her, support her, and meet her needs.

**{¶19}** Andrew Warhola, the Guardian ad Litem, testified he filed a report on May 3, 2023, and a supplemental report on May 10, 2023. Warhola recommended permanent custody of the Child be granted to GCCS and such was in the best interest of the Child. Warhola explained:

[The Child] has been in limbo, in the legal system now, for over three years. Father has not been involved and apparently doesn't want to be involved. Mother's been in and out of prison or jail during that time. She hasn't completed her case plan. She has a felony charge pending against her and a misdemeanor charge pending against her.

She's currently in jail right now. There's no indication as to when she may or may not be released. And I don't believe there's a reasonable expectation that she is going to be able to complete the conditions of the case plan.

[The Child] is very frustrated. She really needs stability. She's just been in various placements and she wants to be adopted. She wants to

bring this case to a conclusion.  She really needs a stable, permanent

environment.]

**{¶20}**  Transcript of May 11, 2023 Proceedings at pp. 79-80.

**{¶21}**  B.J. Yates, the Court Appointed Special Advocate for Children ("CASA"), filed a CASA report on April 28, 2023.  Yates, likewise, testified he believed permanent custody of the Child should be granted to GCCS and such was in the best interest of the Child.  Yates explained it was the Child's desire, adding Father is not interested and Mother's "track record speaks for itself." *Id.* at p. 85.  Yates noted the Child needs stability and a stable home and Mother is unable to provide the same at this time.

**{¶22}**  Via Journal Entry filed May 25, 2023, the trial court terminated Mother's parental rights and granted permanent custody of the Child to GCCS.  The trial court found the Child had been in the temporary custody of GCCS for 12 or more months of a consecutive 22-month period.  The trial court also found the Child cannot or should not be placed with Mother within a reasonable time.  The trial court determined it was in the Child's best interest to grant permanent custody to GCCS.

**{¶23}**  It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO GUERNSEY COUNTY CHILDREN SERVICES, AS THE TRIAL COURT'S DETERMINATION THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR

CHILD WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

II. THE AGENCY FAILED TO MAKE INTENSIVE EFFORTS TO IDENTIFY AND ENGAGE A KINSHIP CAREGIVER FOR [THE CHILD] AS REQUIRED BY R.C. 2151.4116.

**{¶24}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶25}** In her first assignment of error, Mother argues the trial court's finding permanent custody was in the Child's best interest was not supported by clear and convincing evidence.

**{¶26}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

**{¶27}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody

of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

{¶28} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶29} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

{¶30} Here, Mother concedes the Child had been in the temporary custody of GCCS for 12 or more months of a consecutive 22-month period, but maintains the trial court's determination permanent custody was in the Child's best interest was not supported by clear and convincing evidence.

{¶31} We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse-of-discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A trial court's failure to base its decision on a consideration of the best interest of the child constitutes an abuse-of-discretion. *In re R.S.*, 8th Dist. Cuyahoga No. 111353, 2022-Ohio-4387, ¶ 45 (Citation omitted). "The term 'abuse-of-discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶32} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶33} The juvenile court has considerable discretion in weighing these factors. *In re D.A.*, supra at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

**{¶34}** Mother asserts the trial court failed to adequately consider and weigh the interaction and interrelationship between the Child and the Siblings, explaining, "The interrelationship between [the Child] and [the Siblings] and the effect permanent custody would have of the relationship between [the Child and the Siblings] was not adequately considered in determining whether permanent custody was in [the Child's] best interest." Brief of Appellant at p. 9.

**{¶35}** We find the trial court's determination granting permanent custody to GCCS was in the best interests of the Child was supported by clear and convincing evidence. The evidence established the Child had a relationship with the Siblings. The Child was able to visit with Sibling 1 and they spoke on the phone. GCCS intended to continue the Child's visits with Sibling 1. The Child had not seen Sibling 2 for some period of time due to E.S. not allowing visitation. The Child and Mother did not maintain consistent contact due to Mother's ongoing incarcerations. The Child expressed her desire GCCS be granted permanent custody in order to facilitate the adoption process. The Child wants a family to love and support her. The Child had been in the custody of GCCS for more than 12 months of a consecutive 22-month period. The Child needed a legally secure permanent placement, which Mother was unable to provide due to her unaddressed substance abuse and repeated incarcerations.

**{¶36}** A child's best interests are served when the child is placed in a permanent situation which fosters growth, stability, and security. See, *In re A.D.*, 5th Dist. Muskingum No. CT2022-0091, 2023-Ohio-1731, ¶ 71. "The discretion which the juvenile court enjoys

in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, 2022 WL 1579856, ¶ 101 (Citations omitted).

**{¶37}** Mother's first assignment of error is overruled.

II

**{¶38}** In her second assignment of error, Mother contends GCCS failed to make intensive efforts to identify and engage a kinship caregiver for the Child as required by R.C. 2151.4116.

**{¶39}** R.C. 2151.4116, which became effective on September 30, 2021, promotes the placement of children with family members when possible. The statute provides, in relevant part, "[a] public children services agency or private child placing agency shall make intensive efforts to identify and engage an appropriate and willing kinship caregiver for the care of a child who is in * * * [t]emporary custody of the agency[.]" R.C. 2151.4115(A)(1) defines "kinship caregiver" as the term is defined in R.C. 5101.85, and includes, among others, persons related by blood or adoption (e.g., grandparents, siblings, aunts, uncles, and cousins), and others such as stepparents, legal custodians or guardians, and "[a]ny nonrelative adult that has a familiar and long-standing relationship or bond with the child or the family, which relationship or bond will ensure the child's social ties."

**{¶40}** As set forth in our Statement of the Case and Facts, supra, GCCS had not be able to locate any suitable relative to take the Child. The Agency investigated Mother's

cousin and Sibling 1 as potential kinship caregivers.  Mother's cousin tested positive for drugs and there a household member of cousin's daughter had a criminal history.  Neither Mother's cousin nor Sibling 1 were appropriate kinship caregivers.  Sibling 2's paternal grandmother had custody of the Child for less than six (6) months in 2021, when she contacted GCCS and advised she was no longer willing to care for the Child.  In addition, Father informed GCCS Caseworker Mallet he had only met the Child a couple of times.  Father admitted he was not in a position to seek custody or placement of the Child.  Father informed Mallet no one in his family would be appropriate to care for the Child.  We find GCCS made all required efforts to find an appropriate and willing relative placement for the Child.

**{¶41}**  We note Mother raises this argument for the first time on appeal.  By failing to timely raise this argument below, Mother has forfeited all but plain error on appeal.  See, *In re T.B.*, 9th Dist. Summit No. 27334, 2014-Ohio-4040, 2014 WL 4638704, ¶ 12.

**{¶42}**  The purpose of the Kinship Caregiver Act is to compel agencies to exercise intensive efforts to place children who are in their *temporary* custody in kinship care rather than in foster care. R.C. 2151.4116.  Once a child enters the permanent custody of a public children services agency, the question of whether the child should reside in foster care or with a kinship caregiver while the child is in the agency's temporary custody becomes moot. Accordingly, we find no plain error.

**{¶43}**  Within this assignment of error, Mother also asserts, "there was no evidence presented that the agency utilized search technology to find biological family members, as required by R.C. 2151.4117."  Brief of Appellant at p. 10.  We find R.C. 2151.4117

does not require the use of technology in a search to find a kinship caregiver.  We find this argument is without merit.

**{¶44}**  Mother's second assignment of error is overruled.

**{¶45}**  The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur