[Cite as *In re A.S.*, 2024-Ohio-2099.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:


A.S., C.S., and H.S.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case Nos. 2024 CA 0009, 00016,
            00017, and 00018

O P I N I O N
NUNC PRO TUNC


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. F2019-0530, F2019-0531, and F2021-0299 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 31, 2024 |

APPEARANCES:

For Appellant Mother

ROBIN LYN GREEN
P. O. Box 2157
Newark, Ohio 43058

For Appellant Father of A.S.

CAROLYN E. FITTRO
1335 Dublin Road, Suite 115F
Columbus, Ohio 43215

For Appellee

JENNY WELLS
PROSECUTING ATTORNEY
KENNETH W. OSWALT
ASSISTANT PROSECUTOR
20 South Second Street, 4th Floor
Newark, Ohio 43055

*Wise, J.*

**{¶1}**    This appeal comes before this Court on the finding of the Licking County Common Pleas Court, Juvenile Division, awarding permanent custody of A.S., C.S. and H.S. to the Appellee, Licking County Department of Family Services (DFS), Children's Division.  We affirm the decision of the trial court.

## FACTS AND PROCEDURAL HISTORY

**{¶2}**    A.S., dob June 5, 2013, C.S., dob September 18, 2015, and H.S., dob October 29, 2020, are the biological children of appellant, R.C. (mother).  Appellant T.S. is the biological father of A.S. The father of C.S. and H.S. is J.L.  J.L., while appointed an attorney, did not participate in the proceedings below and is not a party to this appeal.

**{¶3}**    The children have been involved with the DFS for most of their lives due to the substance abuse of their mother.  A.S. has been in foster care for almost half of her life, C.S. for over half of her life, and H.S. from the time she was ten-months-old into her toddler years.

**{¶4}**    In May, 2019, DFS became re-involved with the family due to concerns that their mother had relapsed on methamphetamine.  DFS sought and received temporary custody of A.S. and C.S. on December 26, 2019.

**{¶5}**    After extensions of time were granted by the court to allow for reunification in May, 2021, the children were returned to their mother and T.S. on a plan whereby DFS retained temporary custody of A.S. and C.S., and appellants were given "extended visitation."  The infant, H.S., was not then in the temporary custody of DFS.

**{¶6}**    In August, 2021, Sergeant Joshua McGeorge of the Pataskala Police Department was dispatched to the home where mother and T.S. were living with the

children.  He found A.S. in the car with a female stranger.  Sergeant McGeorge learned that A.S. was found by the female stranger riding her bicycle around 9:55 am in her pajamas with a knife in her backpack. A.S. told Sergeant McGeorge that she was out looking for her mother.  Five-year-old C.S. and ten-month-old H.S. were home alone.

{¶7}    Sergeant McGeorge found T.S. sitting outside by some steps.  He told McGeorge that he was out getting breakfast and R.C. was in the home when he left.

{¶8}    RC. returned a short time later with laundry in the car and told McGeorge she went to the laundromat, and that T.S. was at the residence when she left.

{¶9}    DFS was called and told T.S. and mother to report to the offices of DFS that day.
But instead of reporting to DFS, T.S.  and mother fled Licking County with the children and were traced to a motel room in Athens, Ohio.  DHS dispatched a social worker to retrieve the children.  They were found anxious, crying, and all had a severe case of head lice.  Appellants admitted to a relapse of substance abuse.

{¶10}  Mother and T.S. were charged with child endangering and kidnapping.  All three children were placed together in a respite foster home.

{¶11}  On August 31, 2021, DFS filed a motion for permanent custody of A.S. and C.S.  That same day a complaint for permanent custody or in the alternative temporary custody of H.S. was filed by DFS.

{¶12}  Amended case plans for reunification were prepared by DFS.  The plans included substance abuse treatment, parenting education, counseling, stable housing and drug and alcohol screening. Visitation with the children was permitted, and referrals for housing and employment were provided by DFS.

{¶13} On September 15, 2022, the DFS motion for permanent custody came on for hearing before Magistrate Mattie M. Klein. Both mother and T.S. were present and represented by counsel.  The father of C.S. and H.S. did not appear at the hearing but was represented by counsel.

{¶14} Appellant-mother did not contest termination of her parental rights but requested that T.S. receive "legal custody" of all three of the children.  Tr. 8.  At the time of the hearing, appellants were no longer living together.

{¶15} DFS presented the testimony of the caseworkers and the Sergeant from the Pataskala Police Department.

{¶16} Evidence was presented that since 2021, mother had lapsed even further into substance abuse.  She was charged with two DUIs, one while minor was in the vehicle

{¶17} T.S., on the other hand, had made more progress on the Case Plan.  He attended in-patient treatment for substance abuse, presented negative drug tests, obtained employment and visited the children regularly. But he did not have safe and stable housing. He lived with a woman he met at the in-patient rehabilitation facility, was not on the lease for the premises, and did not provide a plan for housing for the children.

{¶18} T.S. testified that he has had a substance abuse problem since 2007, has been in outpatient treatment two times and inpatient treatment one time.  The longest he has been clean from drug abuse is two years.

{¶19} At the conclusion of the hearing, the Magistrate took the matter under advisement and issued a seventeen-page opinion/judgment entry on June 2, 2023.  The Magistrate found clear and convincing evidence, pursuant to R.C. 2151.414(D), to grant

permanent custody of A.S., C.S. and H.S. to DFS. After timely objections were filed by appellants, the trial court conducted an independent review of the matter. On January 12, 2024, the trial court adopted the Magistrate's decision in its entirety with the added modification that no visitation and contact occur between the children and the parents.

{¶20} The appeals of T.S. and mother have been consolidated and assert the following assignments of error.

ASSIGNMENTS OF ERROR AS TO T.S.

{¶21} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS OF A.S. TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF HER PARENTS AND PLACE HER IN THE PERMANENT CUSTODY OF LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN SERVICES DEPARTMENT.

{¶22} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT A.S. COULD NOT BE PLACED WITH HER FATHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH HER FATHER."

ASSIGNMENT OF ERROR AS TO R.C. (MOTHER)

{¶23} "I. THE TRIAL COURT'S ENTRY GRANTING PERMANENT CUSTODY TO THE AGENCY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**LAW AND ANALYSIS**

*Standard of Review in permanent custody*

{¶24} In *In re. Z.C.,* 173 Ohio St.3d 359, 2023-Ohio-4703, 220 N.E.3d 1130, the Ohio Supreme Court resolved a certified conflict between two Ohio appellate districts regarding the appropriate standard of review for permanent custody decision made pursuant to R.C. 2151.414. *Id.* ¶ 1. The Court was asked to determine whether the appropriate standard of review of such a decision was abuse of discretion or sufficiency of the evidence and/or manifest weight of the evidence. The court concluded that the appellate standard of review for a permanent custody decision was sufficiency of the evidence/manifest weight of the evidence. *Id.* ¶ 18. Recognizing that sufficiency and manifest weight are separate and distinct standards, the court stated that the appellate court must apply the standard "as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* ¶ 11.

{¶25} On remand from the Ohio Supreme Court, this Court applied the sufficiency of the evidence/manifest weight of the evidence to an appeal granting permanent custody to the Tuscarawas County Job and Family Services. *See Matter of J.C.,* 5th Dist., Tusc. Nos. 2022 AP 11 0044, 2022 AP 11 0045, 2022 AP 11 0046, 2024-Ohio-1505, ____N.E.3d ____.

{¶26} Here, the mother frames her alleged error in the trial court granting permanent custody to DFS as against the manifest weight of the evidence. T.S., the father of A.S., frames his alleged errors as an abuse of discretion and lack of clear and convincing evidence for the trial court to grant permanent custody. While appellant claims an abuse of discretion, it is the appellate court's role to apply the appropriate standard of

review depending on the nature of the arguments. "It is not the appellant's role to dictate the standard of review in his or her assignment of error." *In re: Z.C., supra,* ¶ 17.

**{¶27}** Therefore, we review the assigned errors under a sufficiency of the evidence/manifest weight of the evidence standard.

**{¶28}** On review for manifest weight, the standard in a civil case, is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered. *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist., 1983); *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

**{¶29}** Because the fact finder is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179 972 N.E.2d 517, ¶ 21.

**{¶30}** Sufficiency of the evidence, on the other hand, is a test of adequacy. *In re. Z.C., supra,* ¶ 13 quoting *Thompkins* at 386, 678 N.E.2d 541. "When applying a sufficiency of the evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the jury's verdict as a matter of law.'" *Id.* ¶ 13 (citations omitted).

*Burden of Proof for Permanent Custody*

**{¶31}** An award of permanent custody must be based on clear and convincing evidence, R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in a criminal case. It does not mean clear and unequivocal." *Matter of J.C, supra,* ¶ 25, quoting *In re: Estate of Haynes,* 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

*R.C. 2151.414(B) Determinations by Trial Court*

**{¶32}** Pursuant to R.C. 2151.414(B), a trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that one of five circumstances apply. In practice, a trial court will usually determine whether one of the five circumstances outlined in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child.

**{¶33}** R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines by clear and convincing evidence it is in the best interest of the child to grant permanent custody to the Agency

and that any of the following apply: (a) The child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period; (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state..

{¶34} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time, or should not be placed with the parents.

{¶35} Here, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a) (Reasonable time) and 2151.414(E) (permanent home and other relevant factors). As noted by appellee, an additional finding was available to the trial court for A.S. under R.C. 2151.414(B)(1)(d) (12 months in 22 months).

{¶36} As long as one of these factors is present, then the first prong of the test is satisfied.

{¶37} Appellant argues that he substantially complied with his case plan, disputing the trial court's finding of reasonable time, R.C. 2151.414 (B)(1)(a). The undisputed record, however, belies that claim. By his own accounts, T.S. has been addicted to drugs that impair his ability to raise and nurture children since 2007. Tr. 70. He has been in out-

patient therapy two times and in-patient rehabilitation one time. Indeed, DFS removed his eldest son and gained permanent custody. He has a criminal past which included child endangering. While his negative drug testing at the time of the hearing is laudatory, his failure to offer A.S. a permanent and stable home was sorely lacking. He testified that he was living as a tenant with a woman he met at the in-patient rehabilitation center, was not on the lease, and offered no concrete evidence that a home was available for A. S. His last permanent residence was in Pataskala when he suffered a relapse and went into rehabilitation. His testimony regarding his ability to offer A.S. stable housing was self-serving and not corroborated by any other evidence he offered.

**{¶38}** While appellant argues that he should have been given more time to secure housing, stable housing in the life of A.S. was of paramount importance. She had been in multiple foster homes for much of her life. In 2021, when DFS returned the children to T.S. and R.C., A.S. was found riding her bicycle in her pajamas with a knife in her backpack. Neither mother nor father were found home by law enforcement, and A.S. was picked up by a stranger. The children were then uprooted when T.S. and mother fled the county and were found in a motel room in Athens County disheveled and crying.

**{¶39}** There was clear and convincing evidence that T.S. could not provide stable housing to A.S. at the time of the hearing or in the reasonable future. As the trial court found, DFS has been offering reunification services to the parents for approximately five years. "However, even after approximately five (5) years of Agency involvement and case planning services, [mother] remains unable to maintain sobriety and [T.S.] remains unable to maintain stable and independent housing to consistently provide for the children's needs." Opinion/Judgment Entry, Jan. 12, 2024 at 10.

**{¶40}** So too, A.S. has been in the custody of DFS in excess of twelve months of a consecutive twenty-two-month period. R.C. 2151.414(B)(1)(d). While the trial court did not make a specific finding regarding this factor, it demonstrates the inability of T.S. to provide his daughter with stable housing. This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In re. D.H.,* 5th Dist., Licking No. 2022 CA 00025, 2022-Ohio-4495, ¶ 59.

**{¶41}** The trial court did not err in finding that grounds existed for permanent custody and its finding is based on sufficient evidence and is not against the manifest weight of the evidence. *Matter of L.G.,* 5th Dist., Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

### *Best Interest Determination by Trial Court*

**{¶42}** In determining the best interest of the child at the permanent custody hearing, the trial court must consider all relevant factors, including but not limited to the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child, R.C. 2151.414(D).

{¶43} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re. E.H.,* 5th Dist., Stark No. 2022CA00007, 2022-Ohio-1682, ¶ 101 quoting *In re: Manzy Children,* 5th Dist., No. 2000CA00244, 2000 WL 170073 (Nov. 13, 2000) citing *In re: Awkal, 9*5 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist., 1994).

{¶44} The trial court found that it is in the children's best interests that DFS be awarded permanent custody and thus eligible for a permanent adoptive home. We find there was competent, credible evidence to support the trial court's decision, and it is not against the manifest weight of the evidence.

{¶45} The trial court heard the testimony of the case workers assigned to the children's case, read the final report of the GAL, and heard his testimony opining that it was in the best interests of the children that DFS be granted permanent custody. It found that A.S. was ten-years old, C.S. was seven-years old, and H.S. was two-years old. It found that "the girls' custodial history and familial relationships are riddled with instability and warrant permanency." Judgment Entry, June 2, 2023 at 16. At the time of the hearing, the girls were placed in a foster home together and receiving counseling and treatment for behavioral issues.

{¶46} While the trial court found that the children had a bond with their mother and father, that bond was outweighed by the instability that permeated the children's life. The trial court further made a finding that relative placements were not available.

**{¶47}** T.S. argues that DFS did not meet its burden of proving that an award of permanent custody to the Agency is in the children's best interest, again arguing that he substantially complied with the case plan by maintaining negative drug screening and obtaining employment. However, the evidence demonstrates that any detriment which may occur by severing any bond is outweighed by the benefits of permanency for A.S., C.S. and H.S. While there was evidence that T.S. made progress on his case plan by testing negative for drugs and finding employment, his history of inability to maintain sobriety and lack of stable housing was of great concern to the trial court. A finding that a parent has satisfied some case plan goals does not equate to a finding that the parent has the ability to assume custody of a child. R.C. 2151.414(E)(1); *In re: L.R.L.,* 10th Dist., Franklin No. 22 AP-381, 2023-Ohio-2071, 218 N.E.3d 284, ¶ 44.

**{¶48}** The clear and convincing evidence here supports the trial court's finding that the children's best interests are served by awarding DFS permanent custody, thus making them eligible for permanent adoptive homes that can serve their special needs for permanence and stability.

## CONCLUSION

**{¶49}** This Court finds that the trial court carefully weighed the evidence and found by clear and convincing evidence that A.S., C.S. and H.S. cannot be placed with either parent within a reasonable time, and that permanent custody of the children to DFS is in their best interests.

**{¶50}** Appellant T.S.'s Assignments of Error are overruled.

**{¶51}** Mother appeals the trial court's findings on manifest weight of the evidence grounds claiming that permanent custody to DFS was error and that T.S. should be given custody of all three of the children.

**{¶52}** It is questionable whether mother has standing to assert the custody of the children to T.S.  This is particularly true where T.S. is not the biological father of two of the children and filed no appeal requesting custody of them.  *Matter of G.T.,* 5th Dist., Richland No. 2221 CA 0066, 2022-Ohio-654, 186 N.E.3d 252, ¶ 35 (Mother cannot raise issues on behalf of an allegedly aggrieved third party, particularly when that party could have appealed the issue to protect his or her own interests).

**{¶53}** Nonetheless, we reject mother's argument that the trial court's finding granting permanent custody to DFS was against the manifest weight of the evidence.

**{¶54}** Appellant mother's assignment of error is overruled.

**{¶55}** The judgment of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is affirmed.

By: Wise, J.
Gwin, P. J., and
King, J., concur.

JWW/kt 0522