[Cite as *In re E.T.S.*, 2025-Ohio-2665.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
E.T.S. (D.O.B.: 11/18/16)
Q.T.S. (D.O.B.: 11/19/17)
Z.T.S. (D.O.B.: 2/26/16)

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Kevin W. Popham, J.
Hon. David M. Gormley, J.


CASE NOS. 2025 CA 22,
2025 CA 23, 2025 CA 24


O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Juvenile Division, Case Nos. 2021 DEP 00068, 2021 DEP 00069, 2021 DEP 00072 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | July 28, 2025 |

APPEARANCES:

For Appellee Richland County
Children Services Board

Jeffrey M. Kiggans
731 Scholl Road
Mansfield, Ohio 44907

For Appellant Mother

Edward C. Corley
3 North Main Street, Suite 603
Mansfield, Ohio 44902

*Gormley, J.*

**{¶1}** In this permanent-custody appeal, appellant mother challenges the judgment of the Richland County Juvenile Court granting permanent custody of three of her children — E.T.S., Q.T.S., and Z.T.S. — to the Richland County Children Services Board (the "Agency"). Finding no error in the juvenile court's judgment, we now affirm.

## The Key Facts

**{¶2}** In May 2021, E.T.S., Q.T.S., and Z.T.S. (the "Older Children"), along with two other siblings (collectively, the "Children"), were taken into the temporary custody of the Agency after one of the siblings was discovered to have a spiral fracture (an injury typically caused by the pulling and twisting of a limb) on his arm as well as several other bone fractures throughout his body that were in various stages of healing. The injuries suggested that that sibling — who was less than six months old — had been physically abused.

**{¶3}** Once the Children were placed into temporary custody, the Agency created a case plan for mother and father that required them to successfully engage in parental-education classes, mental-health counseling, and anger-management counseling.

**{¶4}** In March 2023, the Agency, after having temporary custody of the Children for more than a year and a half, asked the trial court to grant permanent custody of the Children to the Agency. After a contested dispositional hearing, the trial court granted permanent custody of the two youngest siblings to the Agency, but it declined to grant the Agency permanent custody of the Older Children. The court denied the Agency's motion for permanent custody of the Older Children because — at that time — the Older Children

expressed the desire to resume living with mother and father. The Older Children's guardian ad litem also recommended against an award of permanent custody then.

{¶5}   In January 2024, the trial court — looking to explore the possibility of the Older Children being reunified with mother and father — ordered the Agency to create an amended case plan that would allow expanded parental visitation. That amended plan included a provision allowing Q.T.S. to return to mother and father's home for a 30-day trial visit.

{¶6}   By the following month, however, the reintegration of Q.T.S. into mother and father's home was suspended when reports emerged that Q.T.S. was watching pornography with father, that mother and father smoked marijuana together while Q.T.S. was nearby, and that Q.T.S. had tested positive for marijuana.

{¶7}   In February 2024, the Agency sought permanent custody of the Older Children in light of the failed reintegration of Q.T.S. In March 2025, after another contested dispositional hearing, the trial court awarded permanent custody of the Older Children to the Agency. Mother now appeals.

## The Juvenile Court Did Not Err in Granting Permanent Custody of the Children to the Agency

{¶8}   In her sole assignment of error, mother argues that the trial court erred in granting permanent custody of the Older Children to the Agency because, in her view, she had made significant progress on her case plan and the Older Children would be better off living with her.

{¶9}   A trial court "may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency" and that any one of the five factors

enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. R.C. 2151.414(B)(1). R.C. 2151.414(B), therefore, "establishes a two-pronged analysis." *Matter of K.H.*, 2025-Ohio-21, ¶ 30 (5th Dist.). "In practice, the trial court will usually determine whether one of the . . . circumstances delineated in R.C. 2151.414(B)(1)(a) through [(e)] is present before proceeding to a determination regarding the best interest of the child." *Id*.

{¶10} Clear and convincing evidence is evidence that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id*. at ¶ 26, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *Z.C.*, 2023-Ohio-4703, at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

### A. The R.C. 2151.414(B)(1) Factors

{¶11} R.C. 2151.414(B)(1) lists five scenarios, any one of which can serve as a prerequisite for a trial court's consideration of a permanent-custody request. The trial court here found that two of those scenarios — the ones in R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) — applied in this case. "As long as one of these factors is present, then the first prong of the test is satisfied." *Matter of A.S.*, 2024-Ohio-2099, ¶ 36 (5th Dist.).

{¶12} R.C. 2151.414(B)(1)(a) applies when the "child is not abandoned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

**{¶13}** R.C. 2151.414(B)(1)(d) applies when "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period."

**{¶14}** To determine, under the first of those — R.C. 2151.414(B)(1)(a) — whether a child cannot be placed with either parent, a court must look to R.C. 2151.414(E). That section in turn lists 16 possible scenarios, any one of which can support a trial court's finding that a child cannot be placed with either parent. The trial court here relied on R.C. 2151.414(E)(1). "The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time." *In re A.W.*, 2024-Ohio-5791, ¶ 19 (5th Dist.).

**{¶15}** 2151.414(E)(1) applies when "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

### B. The Best-Interest Factors

**{¶16}** In determining whether granting permanent custody of a child to an agency is in that child's best interest, the trial court must consider all relevant factors, including, but not limited, to those listed in R.C. 2151.414(D)(1).

**{¶17}** Those statutory factors include the child's interactions and relationships with the child's family members and persons who may significantly affect the child, the wishes of the child (with due regard to the maturity of the child), the custodial history of

the child, and the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

**{¶18}** "A child's best interests are served" when the child is placed in a permanent situation that "fosters growth, stability, and security." *In re M.K.*, 2023-Ohio-3786, ¶ 36 (5th Dist.). "'The discretion" that the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Id.*, quoting *In re E.H.*, 2022-Ohio-1682, ¶ 101 (5th Dist.).

### C. The Record Supports the Juvenile Court's R.C. 2151.414(B)(1) Findings

**{¶19}** The record shows that the Older Children were first placed into the temporary custody of the Agency in May 2021 and that they remained there for more than three consecutive years. That length satisfies the twelve-or-more-consecutive-months time period of R.C. 2151.414(B)(1)(d).

**{¶20}** Moreover, clear and convincing evidence supports the trial court's finding that mother — despite reasonable case-planning services from the Agency — failed to remedy the conditions that led to the removal of the Older Children. The case plan that was initially designed for mother and father called for parental education, mental-health counseling, anger-management counseling, marijuana remediation, and supervised visits.

**{¶21}** Mother and father did, at times, participate in the parental-education and mental-health services that were offered to them, but that participation did not remedy the concerns that led to the initial temporary-custody award. Both mother and father used

marijuana while engaged in the case plan, and they both continued to smoke marijuana when Q.T.S. was living with them.

{¶22} One of the trial court's principal concerns — father's anger issue — was not remedied during the temporary-custody period. The trial court heard testimony indicating that father had publicly harassed one of the Agency's case workers at a grocery store and that he had been convicted of aggravated menacing in connection with his conduct after he had caused a multi-vehicle highway crash.

{¶23} Evidence in the trial court also showed that mother was unable to control the Older Children's violent behavior toward each other during supervised visits, that she suffered from substantial intellectual limitations that prevented her from succeeding in her parental-education goals, and that her continued relationship with father put the Older Children in danger.

{¶24} The trial court properly determined that at least one of the R.C. 2151.414(B)(1) factors was met.

### D. Granting Permanent Custody of the Children to the Agency is in the Children's Best Interests

{¶25} Clear and convincing evidence supported the trial court's conclusion that the Older Children's best interests would be served by a grant of permanent custody to the Agency. The evidence showed that, because of the substantial amount of time that the Older Children remained in the temporary custody of the Agency, the Older Children's relationship with mother and father had been significantly eroded. The Older Children also expressed their desire to remain with their foster caregivers rather than returning to live with mother and father. (That current view represents a change by the Older Children from their stance at the 2023 permanent-custody hearing.)

**{¶26}** We find, too, clear and convincing evidence that, because of mother and father's untreated mental and emotional issues as well as their lack of adequate parenting skills, a safe and stable home is not available for the Older Children absent a grant of permanent custody to the Agency.

**{¶27}** At the conclusion of the dispositional hearing, the Older Children's guardian ad litem testified that based on her experience with mother and father, a permanent-custody grant would be in the Older Children's best interest, given mother's past and recent failures to care for the Older Children, together with the stability that the Older Children have found in their foster placements.

**{¶28}** The best-interest factors weigh in favor of granting permanent custody of the Older Children to the Agency. Because both prongs of the permanent-custody test have been proven in this case, the trial court properly terminated mother's parental rights and placed the Children in the permanent custody of the Agency. Mother's assignment of error is overruled.

By: Gormley, J.

Hoffman, P.J. and

Popham, J. concur.