[Cite as *In re L.G.*, 2026-Ohio-336.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: L.G.<br>(DOB: 12-5-18)<br><br>(Sarah S., Appellant) | Case No. 2025CA00117<br><br><u>Opinion & Judgment Entry</u><br><br>Appeal from the Court of Common Pleas<br>of Stark County,<br>Family Court Division,<br>Case No. 2024JCV00452<br><br>Judgment:  Affirmed<br><br>Date of Judgment:  February 3, 2026 |

BEFORE: William B. Hoffman; Kevin W. Popham; David M. Gormley, Judges

APPEARANCES: Richard D. Hixson, Zanesville, Ohio, for Appellant Sarah S.; Brandon J. Waltenbaugh, Canton, Ohio, for Appellee Stark County Job & Family Services

*Gormley, J.*

{¶1}   Appellant Sarah S. challenges the judgment of the Stark County Family Court awarding permanent custody of her daughter, L.G., to Stark County Job & Family Services (the "Agency").  Sarah argues that the trial court erred when it found that L.G. could not and should not be returned to her within a reasonable time, and she challenges, too, the trial court's determination that awarding permanent custody to the Agency was in L.G.'s best interest.  Because we see no error in the trial court's ruling, we now affirm.

**The Key Facts**

{¶2}   In May 2024, the Agency filed its initial complaints — which were later twice amended to correct clerical errors — alleging that L.G. and two of L.G.'s siblings were dependent and neglected because of Sarah's alleged substance abuse, the instability of

her housing, and the children's exposure to known drug users. The trial court on that same day granted the Agency's request to take immediate custody of the children pending a shelter-care hearing to be held the following day. Sarah later agreed to a finding of dependency at an adjudicatory hearing held in July 2024, and the trial court then awarded temporary custody of the children to the Agency. L.G. and her sister, M.G., were placed together with the same foster family that had cared for the girls during the pendency of an earlier case filed by the Agency in 2021 that had ended with the girls being returned to Sarah.

{¶3} Next, the Agency created a case plan that was approved and adopted by the trial court to aid in Sarah's anticipated reunification with her children. That case plan called for Sarah to undergo a substance-use assessment, submit to random drug tests to verify that she was not using illegal drugs, obtain a job, and find stable housing. And the substance-use assessment, once it was completed, resulted in a recommendation that Sarah participate in individual counseling sessions.

{¶4} A review hearing held in November 2024 informed the court that Sarah had tested positive for methamphetamine use on several of her test dates, still needed to obtain stable housing and employment, and may have been residing with her boyfriend despite the Agency's concerns about that individual's own substance-use issues. The court maintained the conditions as they existed at the time of the review hearing, leaving L.G. and M.G. in the care of their foster family and ordering Sarah to continue making progress on her case plan.

{¶5} In March 2025, the Agency filed a motion asking the court to grant permanent custody of L.G. and M.G. to the Agency, alleging — among other things —

that L.G. and M.G. could not be placed with Sarah within a reasonable time and that awarding permanent custody to the Agency was in L.G. and M.G.'s best interests. After considering the evidence presented at a contested dispositional hearing, the trial court awarded permanent custody of the girls to the Agency. Sarah now appeals that decision.

**The Trial Court Did Not Err by Granting Permanent Custody of L.G. to the Agency**

{¶6} In her first assignment of error, Sarah argues that the trial court erred by finding that L.G. could not and should not be returned to Sarah within a reasonable amount of time, and Sarah points to her case-plan progress in support of that view. Sarah contends in her second assignment of error that the trial court improperly determined that awarding permanent custody to the Agency was in L.G.'s best interest.

{¶7} A trial court "may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency" and that any one of the five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. R.C. 2151.414(B)(1). R.C. 2151.414(B), therefore, "establishes a two-pronged analysis." *Matter of K.H.*, 2025-Ohio-21, ¶ 30 (5th Dist.). "In practice, the trial court will usually determine whether one of the . . . circumstances delineated in R.C. 2151.414(B)(1)(a) through [(e)] is present before proceeding to a determination regarding the best interest of the child." *Id.*

{¶8} Clear and convincing evidence is evidence that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 26, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before

it to satisfy the requisite degree of proof.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

**A. The Record Supports the Trial Court's R.C. 2151.414(B)(1)(a) Finding**

{¶9} R.C. 2151.414(B)(1) lists five scenarios, any one of which can serve as a prerequisite for a trial court's consideration of a permanent-custody request. "As long as one of these factors is present, then the first prong of the test is satisfied." *Matter of A.S.*, 2024-Ohio-2099, ¶ 36 (5th Dist.). The trial court here relied on R.C. 2151.414(B)(1)(a), which applies when the "child is not abandoned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶10} To determine, under R.C. 2151.414(B)(1)(a), whether a child cannot be placed with a parent, a court must look to R.C. 2151.414(E). That section in turn lists 16 possible scenarios, any one of which can support a trial court's finding that a child cannot be placed with either parent. "The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time." *In re A.W.*, 2024-Ohio-5791, ¶ 19 (5th Dist.).

{¶11} The trial court in this case found that R.C. 2151.414(E)(1) was the factor supporting a finding that L.G. cannot be placed with her mother, and Sarah now challenges that determination. That statutory provision tells us that a child cannot be returned to a parent within a reasonable time when "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly

to substantially remedy the conditions causing the child to be placed outside the child's home."

{¶12} L.G. was initially removed from Sarah's care due primarily to the Agency's concerns about Sarah's substance abuse and her inability to secure stable housing for her children. Sarah's case plan was designed to address these issues by requiring her to complete a substance-use assessment, to participate in random drug tests, and to obtain housing and employment. And the assessment in turn called for Sarah to participate in individual counseling sessions to address her substance-use issues. The Agency's case worker testified that to assist Sarah in completing the case plan, that worker was willing to provide bus passes, administer the drug tests, offer case-management services, and meet with Sarah every month to answer any questions from her.

{¶13} The trial court heard testimony that Sarah was inconsistent with her counseling sessions until May 2025, which was two months after the Agency had requested permanent custody of L.G. The lab director and toxicologist from the laboratory that analyzed Sarah's drug-test results testified that Sarah had tested positive for methamphetamine use multiple times between August 2024 and December 2024. That witness testified, too, that in June 2025 — the same month when the permanent-custody hearing took place — Sarah tested positive for either fentanyl, cocaine, or methamphetamine use on three different dates. The case worker also testified that Sarah told her that she — Sarah — had tested positive for methamphetamine and the psychedelic drug MDMA when Sarah was tested at her substance-abuse treatment facility on June 24, 2025.

**{¶14}** On Sarah's housing situation, the case worker voiced concerns at the June 2025 hearing about Sarah's ability to make timely rent payments even though Sarah had signed a lease for a two-bedroom apartment in February of that year. As for employment, Sarah alleged that she had been selling hair pieces and wigs for income but provided to the case worker as support some bank statements showing deposits with no indication about the source of the funds. And though Sarah had provided to the case worker some documentation showing that she had completed training for a new job at Lomeda Services, that verification was dated just two days before the hearing, and Sarah was unable to provide a pay stub because she had not yet been paid by that employer.

**{¶15}** We find that clear and convincing evidence supports the trial court's finding that Sarah — despite reasonable case-planning services from the Agency — failed to remedy the conditions that led to L.G.'s removal. Sarah continued to test positive for illegal drugs throughout the 13 months when the case was ongoing, and she had three positive tests in the very month when the permanent-custody hearing was held. She also had not provided sufficient employment verification at the time of the hearing, and she had not alleviated the Agency's concerns about her ability to provide long-term and stable housing for L.G. The trial court therefore did not err by concluding that Sarah had failed to substantially remedy the conditions causing L.G. to be removed from her care and finding that L.G. could not be returned to Sarah within a reasonable time. Sarah's first assignment of error is overruled.

**B. Granting Permanent Custody of L.G. to the Agency is in L.G.'s Best Interest**

**{¶16}** In determining whether granting permanent custody of a child to an agency is in that child's best interest, the trial court must consider all relevant factors, including,

but not limited to, the ones listed in R.C. 2151.414(D)(1). Those statutory factors include the child's interactions and relationships with the child's family members and persons who may significantly affect the child, the wishes of the child (with due regard to the maturity of the child), the custodial history of the child, and the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

{¶17} "A child's best interests are served" when the child is placed in a permanent situation that "fosters growth, stability, and security." *In re M.K.*, 2023-Ohio-3786, ¶ 36 (5th Dist.). "'The discretion'" that the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Id.*, quoting *In re E.H.*, 2022-Ohio-1682, ¶ 101 (5th Dist.).

{¶18} Clear and convincing evidence supported the trial court's conclusion that L.G.'s best interest would be served by granting permanent custody to the Agency. According to the case worker's testimony, though L.G. had bonded with Sarah and though their mother-child visits had gone smoothly, L.G. was also bonded with her foster parents and their two biological children, and L.G., M.G., and the foster family were functioning well as a family unit. The case worker described the foster parents as patient, loving, and attentive to L.G.'s needs. L.G. had been placed with the foster family for over one year when the prior case filed by the Agency had been open, and that foster family continued to provide care for L.G. on the weekends even after that first case had been resolved.

{¶19} In addition, L.G. — who was six years old at the time of the final hearing in the trial court — had received positive feedback from her kindergarten teachers, and the case worker testified that L.G. would remain in that same school district if permanent custody were awarded to the Agency. The trial court found that the foster family was meeting L.G.'s educational and medical needs, and the case worker testified that the foster family was interested in adopting both L.G. and her sister.

{¶20} We find, too, clear and convincing evidence that, because of Sarah's continued use of illegal drugs while this case was ongoing in the trial court and because of the Agency's concerns about her ability to provide long-term and stable housing for L.G., no safe and stable home would be available to L.G. absent a grant of permanent custody to the Agency. L.G.'s guardian ad litem also testified that based on that person's experience with Sarah, a permanent-custody grant would be in L.G.'s best interest.

{¶21} The best-interest factors weigh in favor of the trial court's decision to grant permanent custody of L.G. to the Agency. Because both prongs of the permanent-custody test have been shown in this case, we find that the trial court properly terminated Sarah's parental rights and appropriately placed L.G. in the permanent custody of the Agency. Sarah's second assignment of error is overruled.

{¶22}  For the reasons explained above, the judgment of the Family Court Division of the Court of Common Pleas of Stark County is affirmed.  Costs are to be paid by Appellant Sarah S.

By: Gormley, J.;

Hoffman, P.J. and

Popham, J. concur.