[Cite as *In re K.H.*, 2025-Ohio-21.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| K.H. (D.O.B.: 07-24-2018) | : | Hon. Craig R. Baldwin, J. |
| K.H. (D.O.B.: 12-15-2021) | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. CT2024-0081 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court of Common Pleas, Juvenile Division, Case Nos. 22130321 & 22130322

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 3, 2025

APPEARANCES:

For Plaintiff-Appellant

ROSE M. FOX
Fox Law Office
233 Main Street
Zanesville, Ohio 43701

For Defendant-Appellee

RONALD L. WELCH
Prosecuting Attorney
Muskingum County, Ohio

By: KALLEN M. HADDOX
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 43701

*Baldwin, J.*

{¶1}    Appellant, the biological mother of minor children K.H. and K.H. (hereinafter "the children"), appeals the decision of the trial court terminating her parental rights and granting permanent custody of the minor children to appellee Muskingum County Adult and Child Protective Services.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}    On or about December 20, 2021, the appellee filed a Complaint alleging that the children were "dependent children" as defined by R.C. 2151.04(C), and "neglected children" as defined by R.C. 2151.03(A)(2) (4). On the same day, a Motion for an Ex Parte Order was filed by the appellee requesting the emergency removal of the children from the custody of their parents, which was granted. An Ex-Parte Hearing was held on or about December 21, 2021, at which both the appellant and the children's biological father appeared. The trial court placed the children in the temporary custody of the appellee at the conclusion of the hearing.

{¶3}    On or about March 2, 2022, the appellee filed a Family Case Plan in which the appellant and the children's father were identified as having significant mental health and substance abuse issues, as well as housing, income, and parenting issues, which significantly and adversely affected their ability to properly parent and protect the children and provide them with a safe and sober home. No objections were filed to the Case Plan, and it was approved and adopted by the trial court.

{¶4}    Adjudication proceedings took place on or about March 3, 2022, at which the appellant was present with counsel. The children were found to be "dependent children" as defined by R.C. 2151.04(C), and "neglected children" as defined by R.C.

2151.03(A)(2), and were continued in the temporary custody of the appellee. On or about December 21, 2022, an Annual Review was conducted, following which the children were once again continued in the temporary custody of the appellee.

{¶5} On or about March 27, 2023, the appellee filed a Motion for Permanent Custody, which was scheduled for hearing on August 1, 2023. Another review was conducted on or about June 15, 2023, after which the children were continued in the temporary custody of the appellee.

{¶6} On or about July 26, 2023, the appellant filed a Motion to Continue the August 1, 2023, Permanent Custody Hearing. The appellant's motion to continue was granted, and the Permanent Custody Hearing was re-scheduled for November 16, 2023. On or about November 14, 2023, the appellant filed a second Motion to Continue the Permanent Custody Hearing. The second motion to continue was also granted, and the Permanent Custody Hearing was re-scheduled for February 27, 2024.

{¶7} On or about December 15, 2023, a second Annual Review was conducted, and the children were continued in the temporary custody of the appellee.

{¶8} On or about February 20, 2024, the appellant filed a third Motion to Continue the Permanent Custody Hearing. The motion was granted, and the hearing was rescheduled for May 28, 2024. On or about April 24, 2024, the appellant filed a Motion for Unsupervised Visitation, which was also scheduled for hearing on May 28, 2024.

{¶9} The Permanent Custody Hearing and the hearing on the appellant's Motion for Unsupervised Visitation proceeded on May 28, 2024. During the hearing, the appellant orally moved the trial court for a fourth continuance of the Permanent Custody Hearing,

which the trial court took under advisement. In fact, at the conclusion of all testimony and evidence presented, the trial court took all pending matters under advisement.

{¶10} During the course of the May 28, 2024, proceedings, the trial court heard the testimony of, inter alia, appellee caseworker Samantha Webb, who testified that the appellee voluntarily became involved with the family in November of 2021- prior to the birth of the second child - due to the appellant's drug use and housing conditions. Ms. Webb testified further that when the second child was born on December 15, 2021, the child tested positive for opiates, and the appellant was not working the voluntary services the Agency had recommended.

{¶11} The evidence further established that while the appellant attended multiple treatment facilities early in the case, she failed to complete a substance abuse program. The appellant began treatment at Spero Health in December of 2021, but left treatment in March of 2022. She then had an assessment at Muskingum Behavioral Health (MBH) and was recommended for IOP, but failed to return for scheduled appointments, and was unsuccessfully discharged in June of 2022. The discharge letter from MBH recommended that the appellant enter detox and in-patient treatment; however, the appellant failed to follow through with said recommendations.

{¶12} The evidence further established that in April of 2022, the appellant completed an assessment at Muskingum Valley Health Center (MVHC), started the MAT program, and began taking Suboxone again. The MVHC records reflected that the appellant self-reported that MBH recommended IOP, but she felt she did not need IOP.

{¶13} The evidence also indicated that the appellant self-reported to MVHC in April of 2022 that she had started using THC and alcohol at the age of fourteen, Percocet

at the age of seventeen, and Cocaine at the age of eighteen. At the time of this self-reporting, the appellant's toxicology screen was positive for opiates and Oxycodone. The evidence further established that the appellant was positive for Buprenorphine when tested by MVHC on or about April 15, 2022; that on or about April 29, 2022, the appellant admitted to relapsing and tested positive for Buprenorphine and Oxycodone at MVHC; and, that the appellant tested positive for Oxycodone on or about May 10, 2022, and again on June 17, 2022.

{¶14} MVHC continued to prescribe Buprenorphine for the appellant, but she continued to test positive for illegal substances, and inconsistently tested positive for the prescribed Buprenorphine. In September of 2022, the appellant reported that she was no longer attending any type of substance abuse treatment, and that the appellee's caseworker had recommended the appellant re-enter treatment. In April of 2023, the appellant reported that she went back to MVHC and was once again being prescribed Suboxone; however, the MVHC records established that the appellant's last visit to MVHC was in May of 2022. It was reported further that on or about July 5, 2023, the appellant returned to MVHC for an assessment and requested the Sublocade shot, and that the appellant self-reported that she purchased Suboxone "off the street."

{¶15} The appellant completed an assessment at Genesis Behavioral Health (GBH) on or about July 31, 2023, started IOP at GBH on or about August 1, 2023, and received a certificate of completion on or about October 23, 2023. However, the appellant continued to test positive for THC and Oxycodone. She tested positive for THC on or about May 20, 2024, and the same test established that the appellant was negative for Suboxone. The appellant filed a Motion for Hair Follicle Testing, which the trial court

granted on or about February 13, 2024; however, the appellant never complied with said order.

{¶16} The evidence established that despite the appellant's claims that she successfully completed substance abuse treatment, she continued to test positive for drugs, and failed to alleviate the substance abuse concerns that brought the matter to the attention of authorities in the first place.

{¶17} The evidence presented at the permanent custody hearing also established that the appellant was in a romantic relationship with paramour D.P., that she had requested D.P. be added to the case plan, and that the couple had been seen in public together multiple times. In addition, the appellant posted on social media that D.P. was her paramour - despite concerns in that he was not working any case plan services. In fact, when the appellee drug tested D.P. in January of 2023, he tested positive for Oxycodone, THC, and Buprenorphine.

{¶18} The appellant failed to complete any mental health assessment and/or treatment despite the fact that her mental health was both a concern and a component listed in her case plan.

{¶19} In addition, the appellant's housing was a concern from the onset of the case, as the home was in need of major repairs, was reported to have no heat and no running water, and had exposed electrical wiring. While those housing issues were corrected by the landlord, caseworker Webb testified that the appellant permitted inappropriate people to reside in the home with her, and starting in July of 2023 refused to permit the appellee entrance into the home. It was also reported that the authorities were called to the home when an incident occurred regarding an 8-year old child who had

broken multiple windows in the home, and that said child was the child of the appellant's paramour D.P.

**{¶20}** Finally, while the appellant did have supervised weekly visitation with the children available to her, she failed to consistently visit the children, missing forty-six scheduled visits since the opening of the case – six of which were since January of 2024. The appellant had no unsupervised visits throughout the duration of the case.

**{¶21}** At the time of the permanent custody hearing, the case was well over two years old and, at that point, the appellant had failed to successfully complete her case plan, and had failed to alleviate the concerns that had prompted removal of the children from her custody.

**{¶22}** The trial court found by clear and convincing evidence that the appellant's chronic mental illness and/or chemical dependency was so severe that the children could not be placed with her, or their biological father, within a reasonable time, and should not be placed with either parent. The trial court further found that the children had been in the temporary custody of the appellee for more than twelve consecutive months of a twenty-two month period. Based upon these findings, the trial court granted the appellee's motion for permanent custody of K.H. and K.H.

**{¶23}** The appellant filed a timely appeal, and sets forth the following sole assignment of error:

**{¶24}** "I. THE TRIAL COURT ERRED WHEN IT AWARDED PERMANENT CUSTODY AND TERMINATING PROTECTIVE SUPERVISION." (ARGUMENT 1)

**{¶25}** The appellant submits that the trial court erred when it granted permanent custody of K.H. and K.H. to the appellee. We disagree.

## STANDARD OF REVIEW

**{¶26}** The Ohio Supreme Court recently addressed the standard of review in permanent custody cases in the case of *In re Z.C.*, 2023-Ohio-4703:

> Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.
>
> We have described an appellate court's task when reviewing a trial court's application of the clear-and-convincing-evidence burden of proof as follows: "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus; *accord Cross* at 477, 120 N.E.2d 118.

*        *        *

. . . sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*Id.* at ¶7-8, 11.

**{¶27}** The Court went on to define sufficiency of the evidence and manifest weight as follows:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, 678 N.E.2d 541, while weight of the evidence " 'is not a question of mathematics, but depends on its *effect in inducing belief*' " (emphasis sic), *id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386, 678 N.E.2d 541. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when " 'the evidence is legally sufficient to support the jury verdict as a matter of law." ' " *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting *Black's* at 1433.

But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 13-14.

**ANALYSIS**

**{¶28}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶29}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody to the agency; and 2) that any of the following apply:

(a)     The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     the child is abandoned;

(c)     the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)     the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶30}** R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. In this case, the trial court found that R.C. 2151.414(B)(1)(a) and (d) factors applied. K.H. and K.H. could not be placed with either parent within a reasonable time, and had been in the temporary custody of the appellee for more than twelve months of a twenty-two month period.

**{¶31}** The trial court must also consider all relevant evidence before determining that the children cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also provides that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision

that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738.

{¶32} R.C. 2151.414(E) states in pertinent part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1)    Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2)     Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

\*        \*        \*

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

\*        \*        \*

(16) Any other factor the court considers relevant.

**{¶33}** In this case, sufficient evidence was presented that the appellant's chronic mental illness and/or chemical dependency was so severe that the children could not be placed with her, or their biological father, within a reasonable time, and should not be placed with either parent. In addition, the children had been in the temporary custody of the appellee for more than twelve consecutive months of a twenty-two month period of time.

**{¶34}** The primary argument set forth in the appellant's brief is that the trial court erred in refusing to continue the permanent custody hearing and give her additional time to work her case plan. This argument is, however, unpersuasive. The trial court granted the appellant three continuances, extending the opportunity for her to work her case plan by approximately ten months. Thus, the trial court did, in fact, afford the appellant the opportunity to complete her case plan. The appellant simply failed to do so.

**{¶35}** We find that there was sufficiently clear and convincing evidence for the trial court to find that, while the appellant made some efforts to engage in the case plan, she failed continuously and repeatedly to substantially remedy the conditions that caused K.H. and K.H. to be placed outside their home. Further, the evidence presented to the trial court sufficiently established that the appellant's mental health and chemical dependency was so severe that it rendered her unable to provide an adequate permanent home for K.H. and K.H. While she may have engaged in some services offered, she failed to successfully complete substance abuse programs, failed to avail herself of mental health services, and failed to consistently participate in supervised visits with the children.

**CONCLUSION**

**{¶36}** Based upon the foregoing, we find that the trial court's decision to award permanent custody of K.H. and K.H to appellee Muskingum County Adult and Child Protective Services was warranted, was in the best interest of K.H. and K.H., was based upon competent, credible evidence, and was not against the manifest weight or sufficiency of the evidence. The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellant's sole assignment of error, and affirm the decision of the Muskingum County Court of Common Pleas, Juvenile Division.

By: Baldwin, J.

Hoffman, P.J. and

King, J. concur.