[Cite as *In re A.S.*, 2025-Ohio-4523.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | Case No. 2025 CA 00009 |
| A.S. | <u>Opinion And Judgment Entry</u> |
| Dependent Child | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. C2024-0229 |
| | Judgment:   Affirmed |
| | Date of Judgment Entry: September 29, 2025 |

**BEFORE:** Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** JENNY WELLS, Prosecuting Attorney, KENNETH W. OSWALT, Assistant Prosecuting Attorney, for Plaintiff-Appellee; JERMAINE L. COLQUITT, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Je.S., appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, finding A.S. to be a dependent child. Licking County Job and Family Services ("the Agency") is the appellee.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   A.S. was born on May 25, 2021. The appellant is the biological mother of A.S. J.Sm. is listed on the birth certificate as A.S.'s father.

**{¶3}** On May 21, 2024, the State filed a complaint alleging that A.S. was a dependent child. On August 14, 2024, the trial court held an adjudicatory hearing on the matter.

**{¶4}** At the hearing, Troy deHagen, a certified scientist at Forensic Fluids Laboratories, testified that his lab tested five drug screens submitted for the appellant, all of which were positive for methamphetamine, amphetamine, and THC.

**{¶5}** The appellant testified that she is A.S.'s biological mother and said that J.Sm. was the father. She has two other children in the Agency's custody, having been removed from her care due to drug-related concerns. The appellant refused one drug screen, stating she had already submitted to a screen earlier that day for another case. She also failed to appear for a subsequent screen. The appellant was arrested for interference with custody of A.S. She stated that the case was later dismissed. She admitted she would test positive for THC at the time of the hearing. The appellant arranged for her stepdaughter, S.S., to assume temporary custody of A.S.

**{¶6}** Benjamin Robinson, an intake worker with the Agency, testified that he met with J.Sm. at the beginning of the case. J.Sm. denied paternity. Robinson further testified that the appellant had a history with the Agency, including the removal of two other children due to concerns over fentanyl use and noncompliance with case plans.

**{¶7}** Robinson became involved with A.S.'s case following a report that A.S. had been running around a living room with methamphetamine within reach. The appellant allowed Robinson to look into the living room to show that there was no coffee table. However, she denied him entry into the home and refused to take a drug screen. The Agency received a second report alleging that A.S. was seen holding baggies of

methamphetamine in a home with multiple adults present. Again, the appellant denied entry to the Agency and declined to be tested for drugs.

{¶8} Robinson obtained a court order for access to the appellant's home. Upon inspection, he observed no immediate safety hazards. However, the appellant again refused to submit to drug testing, stating she needed to consult her attorney. Although she agreed to meet at the Agency the following morning, she failed to appear.

{¶9} The Agency sought an ex parte order to remove A.S. from the appellant's custody. Initially, the Agency could not locate A.S. Later that day, the appellant contacted Robinson and stated the Agency was "not taking her child." She had taken A.S. to a hotel, where law enforcement later located them. The appellant was arrested, and S.S. stayed with A.S. overnight. Up to that point, the appellant had not submitted to any drug screens.

{¶10} Attorney Christopher Smith, guardian ad litem for A.S., testified that he has been involved with the appellant's other cases. He noted that she had been required to undergo weekly drug testing and had previously attempted to use fake urine to pass. Smith was informed that the appellant tested positive for drugs and believed A.S. to be dependent based on those results.

{¶11} The trial court adjudicated A.S. to be a dependent child.

{¶12} On September 26, 2024, the trial court held a dispositional hearing.

{¶13} At the hearing, Brittany Adzic, an ongoing social worker with the Agency, testified that the appellant has continued to test positive for methamphetamine.

{¶14} Although A.S. was initially placed with S.S., concerns arose about his care during S.S.'s working hours. L.S., the appellant's father, was supposed to watch A.S., but unannounced visits revealed that A.S. was not with him. S.S. later admitted she had taken

A.S. to the appellant's home because she needed emotional support from the appellant. A.S. contradicted this during an interview, stating that the appellant had brought him to her home and that he had been there all day. The Agency determined S.S. was no longer an appropriate caregiver and sought to remove A.S.

{¶15} After S.S. failed to appear for a scheduled meeting, the Agency conducted an unannounced visit but could not locate A.S. or S.S. After contacting S.S., the Agency directed S.S. to bring A.S. to the Agency's office. S.S. indicated that A.S. was not in her possession and that the appellant had taken him earlier that day. Law enforcement was contacted.

{¶16} The appellant initially told the Agency she would arrive within twenty minutes but failed to appear. Eventually, S.S. arrived with A.S., who was then placed in foster care. The appellant missed her first scheduled visit with A.S. She then tested positive for methamphetamine, amphetamine, and THC six days prior to the dispositional hearing. She has never produced a clean drug screen in this case.

{¶17} Ms. Adzic created a case plan for the appellant, which included requirements for stable housing, income maintenance, drug and alcohol treatment, mental health counseling, paternity establishment, and negative drug screens. The appellant stated her job interfered with Friday visitations but failed to respond to suggestions for alternate scheduling. She also missed multiple scheduled phone visits without notice.

{¶18} Adzic testified that after the adjudicatory hearing, the appellant identified another man, J.Sp., as A.S.'s biological father. However, he has not submitted to paternity testing. Adzic explored a potential kinship placement with D.A., J.Sp.'s mother. However,

Adzic found that the home was cluttered, had a strong odor, and was otherwise unsuitable. D.A. suffers from depression, which she attributed to raising three children alone. D.A. has had limited contact with A.S. throughout his life. The Agency deemed placement with D.A. not in A.S.'s best interest.

{¶19} The Agency also looked at J.Sp.'s property, which was cluttered with multiple campers and deemed unsafe. J.Sp. could not be located at the residence and was believed to be living with the appellant.

{¶20} A.S. has adjusted well in foster care. He resides on a farm; he enjoys the animals and the outdoors. Although A.S. tested positive for methamphetamine at birth, he currently has no medical issues. Adzic testified that continued Agency custody is in A.S.'s best interest.

{¶21} The State rested its case.

{¶22} The appellant testified that she is employed as an executive housekeeper at a hotel and claimed her work schedule interfered with Friday visitations. She stated that she informed the Agency and asked her attorney to follow up. She also claimed the guardian ad litem advised her not to visit A.S.

{¶23} The appellant testified in support of D.A. as a caregiver. The appellant acknowledged that D.A. has a cluttered home but denied that it was unsafe. The appellant admitted the entire building had a pervasive odor. She denied having A.S. at her home while S.S. worked and claimed A.S. was not with her on the day the Agency took custody.

{¶24} She further stated she missed a drug screen due to work obligations and expressed surprise that A.S. tested positive for methamphetamine at birth. Days before the dispositional hearing, the appellant had reengaged with the Licking County Alcoholism

Prevention Program after being discharged for missed appointments. She admitted she would test positive for THC at the dispositional hearing but denied using methamphetamine during the pendency of the case. Her goal is to eventually have A.S. reside with her and her father, who has a prior drug trafficking conviction from 2002.

{¶25} Attorney Smith testified that the appellant initially passed drug screens for another case but was suspected of using masking agents to pass the test. While her probation screens were negative, the Agency's results were consistently positive. Smith denied advising the appellant not to attend visitation. He confirmed that she had tested positive for methamphetamine the Friday before the hearing. Smith supported continued Agency custody.

{¶26} D.A. testified as a rebuttal witness. She resides with her boyfriend, R.W., and stated they both have stable income and valid driver's licenses. While she acknowledged clutter in the home, she said she had taken steps to clean it and would do more if A.S. were placed with her. She admitted to a past theft charge and ongoing marijuana use for anxiety. She is currently in therapy for depression.

{¶27} The trial court continued the Agency's temporary custody of A.S.

{¶28} The appellant filed a timely notice of appeal, raising the following two assignments of error.

{¶29} "I. THE TRIAL COURT ERRED BY EXCEEDING THE LIMITED AUTHORITY GRANTED UNDER R.C. 2151.25 BY COMPELLING MOTHER TO SUBMIT TO A DRUG TEST PRIOR TO THE FILING OF A COMPLAINT AND BY PRESUMING A POSITIVE RESULT UPON REFUSAL, IN VIOLATION OF MOTHER'S DUE PROCESS RIGHTS."

**{¶30}** "II. THE TRIAL COURT ERRED BY ADJUDICATING THE CHILD DEPENDENT WITHOUT COMPETENT, SUBSTANTIAL EVIDENCE OF PRESENT HARM OR SUBSTANTIAL RISK OF HARM, IN VIOLATION OF R.C. 2151.04 AND MOTHER'S DUE PROCESS RIGHTS."

## I.

**{¶31}** In the appellant's first assignment of error, the appellant argues that the trial court erred by compelling her to submit to a drug test prior to the filing of a complaint and presuming a positive result upon refusal. We disagree.

### STANDARD OF REVIEW

**{¶32}** The appellant did not object to the caseworker's testimony at the adjudicatory hearing and failed to file objections to that hearing. As such, we review this issue for plain error. Plain error, pursuant to Civ.R. 53(D)(3)(b)(iv), "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process." *S.J. v. J.T.*, 2011-Ohio-6316, ¶8 (6th Dist.). An error affects substantial rights only if it changes the outcome of the trial. *State v. Spaulding*, 2016-Ohio-8126, ¶64.

**{¶33}** The Supreme Court of Ohio discussed the doctrine of plain error in *State v. Bailey*, 2022-Ohio-4407:

> Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution,

under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, Bailey must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in *Rogers*.) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶66, quoting *Rogers* at ¶22; see also *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶52.

The elements of the plain error doctrine are conjunctive: all three must apply to justify an appellate court's intervention. *State v. Barnes*, 94 Ohio st.3d 21, 27, 759 N.E.2d 1240 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial").

*Id*. at ¶¶8-9. Thus, the appellant must establish that (1) an error occurred; (2) that the error was obvious; and, (3) that there is a reasonable probability that the error resulted in prejudice.

**ANALYSIS**

**{¶34}** In the case sub judice, the appellant fails to demonstrate prejudice by the trial court's presumption that the appellant's refusal to submit to a drug screen prior to the filing of a complaint could be treated as testing positive for drugs. In fact, the record reflects that the appellant has failed multiple drug screens throughout the pendency of the case, including testing positive for methamphetamine just days before the dispositional hearing.

**{¶35}** Furthermore, the appellant provides no legal authority to support her claim that the trial court exceeded its authority under R.C. 2151.25. She merely cites to the statute without any analysis under case law or other legal authority. Accordingly, the appellant has failed to show the trial court committed plain error.

**{¶36}** The appellant's first assignment of error is overruled.

## II.

**{¶37}** In the appellant's second assignment of error, the appellant argues the trial court erred by adjudicating the child dependent without competent evidence of present harm or substantial risk of harm. In other words, the trial court's dependency finding was not supported by sufficient evidence of current harm or a substantial risk of harm. We disagree.

### STANDARD OF REVIEW

**{¶38}** A " 'review for sufficiency [of the evidence] asks whether some evidence exists on each element. It is a test of adequacy, and whether the evidence is sufficient to sustain the judgment is a question of law.' " *In re M.S.*, 2023-Ohio-431, ¶17 (1st Dist.), quoting *In re A.B.*, 2015-Ohio-3247, ¶15 (1st Dist.). "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the [court's judgment] as a matter of law.' " *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶3, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

## ANALYSIS

**{¶39}** R.C. 2151.04 defines a dependent child as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" R.C. 2151.04(C). The inquiry "must be grounded on whether the children are receiving proper care and support; the focus is on the condition of the children." *In re A.B.C.*, 2011-Ohio-6570, ¶15 (5th Dist.), citing *In re Bibb*, 70 Ohio App.2d 117, 120 (1st Dist.1980). A parent's conduct "is relevant only insofar as it forms a part of the child's environment and it is significant only if it has a detrimental impact" on that child. *In re L.L.*, 2023-Ohio-3032, ¶18 (5th Dist.).

**{¶40}** "Generally speaking courts apply R.C. 2151.04(C) broadly to protect the health, safety, and welfare of children." *Id*. at ¶19. "[T]he law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm.' " *In re A.B.C.* at ¶27, quoting *In re Burchfield*, 51 Ohio App.3d 148, 156 (4th Dist.1988). " '[A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [p]arent an opportunity to prove her suitability.' " (Bracketed text in original.) *In re Chestnut Children*, 2006-Ohio-684, ¶26 (5th Dist.), quoting *In re Lilley*, 2004-Ohio-6156, ¶34 (4th Dist.).

**{¶41}** The burden is on the state to prove that a child is dependent by clear and convincing evidence. *In re L.L.* at ¶20. Clear and convincing evidence is evidence that " 'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Matter of K.H.*, 2025-Ohio-21, ¶26 (5th Dist.), quoting *Cross v. Ledford*, 161 Ohio St.469 (1954), paragraph three of the syllabus. " 'Where the proof required must be clear and convincing, a reviewing court will examine the record to

determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.' " *In re Z.C.*, 2023-Ohio-4703, at ¶8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

**{¶42}** In the case sub judice, the record reflects the appellant repeatedly tested positive for methamphetamine and amphetamine, she has shown a consistent lack of cooperation with the Agency, she refused to permit home inspections, failed to attend drug screens, evaded the Agency's attempts to take custody of A.S., missed scheduled visitation without notifying the Agency, failed to engage with the Agency to reschedule visitation, and missed drug and alcohol treatment appointments. After reviewing the record, and in light of the broad application of R.C. 2151.04(C), we find that the Agency presented sufficient evidence to support the trial court's finding of dependency.

**{¶43}** Accordingly, the appellant's second assignment of error is overruled.

## CONCLUSION

**{¶44}** Based upon the foregoing, the judgment of the Licking County Court of Common Pleas, Juvenile Division is hereby affirmed.

**{¶45}** Costs to the appellant.

By: Baldwin, P.J.

Popham, J. and

Gormley, J. concur.