[Cite as *In re A.W.*, 2026-Ohio-2401.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: A.W.<br>(DOB: 10-23-23)<br><br>(Eboni G., Appellant) | Case No. 2025 CA 00180 |
| IN THE MATTER OF: M.W.<br>(DOB: 8-19-19)<br><br>(Eboni G., Appellant) | Case No. 2025 CA 00181 |
| IN THE MATTER OF: Z.W.<br>(DOB: 4-5-21)<br><br>(Eboni G., Appellant) | Case No. 2025 CA 00182 |
| IN THE MATTER OF: J.W.<br>(DOB: 8-12-22)<br><br>(Eboni G., Appellant) | Case No. 2025 CA 00183<br><br><u>Opinion & Judgment Entry</u><br><br>Appeal from the Court of Common Pleas of Stark County, Family Court Division, Case Nos. 2024 JCV 01267, 2024 JCV 00196, 2024 JCV 00197, and 2024 JCV 00198<br><br>Judgment: Affirmed<br><br>Date of Judgment: June 24, 2026 |

BEFORE: Craig R. Baldwin, Robert G. Montgomery, and David M. Gormley, Judges

APPEARANCES: Richard D. Hixson (Micheli, Baldwin, Mortimer, McLendon, & Whitacre LLP), Zanesville, Ohio, for Appellant Eboni G. (the children's mother); Brandon J. Waltenbaugh, Canton, Ohio, for Appellee Stark County Job & Family Services

*Gormley, J.*

{¶1} Appellant Eboni G. challenges the judgment of the Stark County Family Court awarding permanent custody of her four children — A.W., M.W., Z.W., and J.W. —

to Stark County Job & Family Services (the "Agency"). Eboni argues that the trial court erred when it found that her youngest child could not and should not be returned to her within a reasonable time, and she challenges, too, the trial court's determination that awarding permanent custody to the Agency was in the best interest of all four children. Because we see no error in the trial court's ruling, we now affirm.

**The Key Facts**

*Initial Removal of M.W., J.W., and Z.W.*

{¶2} M.W., J.W., and Z.W. (the "older children") were taken into the temporary custody of the Agency in February 2024 after someone contacted law enforcement with concerns about the wellbeing of the children. The responding officers arrived at a gas station where the older children were located and met there with Derouis W., who is the children's father. Derouis appeared confused and was unable to provide the officers with the children's last names and dates of birth.

{¶3} A case worker for the Agency went to the gas station on that same day to meet with Derouis, who told that worker that he was trying to take the children to a local hotel but that he did not have any money to get them there. Derouis explained that the house where he and the older children were staying on Freedom Avenue in Alliance, Ohio was unsafe not only due to structural problems in the home but also because of other individuals residing there. Derouis also stated that the children's mother, Eboni, was living in Florida and that he hoped to eventually make his way to Florida with the older children.

{¶4} Those older children, who had honeycomb-shaped burn marks on their bodies, were then placed in the emergency custody of the Agency. A subsequent medical examination revealed that M.W., J.W., and Z.W. had several burn marks on their bodies

that were in various stages of healing, which led the Agency to believe that the children were being abused. Though the children's father had stated at the initial gas-station meeting that the burn marks were caused by a space heater in the home, one of the children told a law-enforcement officer that the burns were caused by their father.

{¶5} The three older children remained in the Agency's temporary custody from their initial removal in February 2024 through the start of the two-day permanent-custody hearing that was held in September 2025. When Eboni was contacted in February 2024 about the circumstances surrounding her three older children, Eboni told the case worker that she was living in Florida and that she could not afford to travel back to Ohio at that time. Eboni's youngest child — A.W. — was living in Florida with Eboni then.

{¶6} Eboni did not appear at the February 2024 shelter-care hearing or the May 2024 adjudicatory hearing where her three older children were found by the trial court to be abused children. M.W., J.W., and Z.W. were then placed with foster families.

{¶7} A case plan was developed for Eboni so that she could one day reunify with the older children. That plan required her, among other things, to complete a parenting evaluation. Eboni's case-plan services for her older children ended in July 2024 after she failed to maintain contact with the Agency and failed to make any progress on her case plan. The Agency's case worker testified at the September 2025 permanent-custody hearing that Eboni did not have any contact with her three older children from February 2024 until October 2024.

*Initial Removal of A.W.*

{¶8} Eboni testified at the permanent-custody hearing that she had moved back to Ohio with the youngest child — A.W. — in August 2024. Soon after that date, the

Agency received information that Eboni and A.W. were residing in the house on Freedom Avenue in Alliance, Ohio that had been described as unsafe by the children's father.

{¶9}   A.W. was taken into the Agency's custody in October 2024 after the Agency's investigation revealed that a registered sex offender was living at the house and that that person had recently been accused of raping an adult woman and sexually abusing another child who was living there.   A.W. remained in the temporary custody of the Agency from her initial removal through the permanent-custody hearing, and she was found to be dependent by the trial court in January 2025.

*Eboni's Participation in Case-Plan Services and the Permanent-Custody Hearing*

{¶10} Eboni reestablished contact with the Agency and began attending hearings in her three older children's cases in August 2024, and she was re-added to case-plan services in those three cases in September 2024.   The case plan at that point called for Eboni to complete a parenting evaluation, obtain a job, and find stable housing.   The Agency also asked Eboni to begin counseling services to address mental-health concerns related to Eboni's own childhood involvement with child-protective services.   Eboni was asked to participate in the same case-plan services for A.W.'s case after A.W., too, was taken into the Agency's temporary custody in October 2024.

{¶11}   The trial court maintained the conditions as they existed following several review hearings that were held in all four children's cases, leaving them in their respective placements and ordering Eboni to make additional progress on her case plan.   Eboni's repeated failure to complete her parenting evaluation was noted in several of the trial court's judgment entries summarizing what had happened at review hearings.   The Agency's temporary custody of the three older children was extended in April 2025 to provide Eboni with additional time to make progress on her case plan.

**{¶12}** In July 2025, the Agency filed a motion asking the trial court to grant permanent custody of all four children to the Agency, alleging — among other things — that they could not be placed with Eboni within a reasonable time and that awarding permanent custody to the Agency was in the best interests of the children. After considering the evidence presented at the contested dispositional hearing in September 2025, the trial court awarded permanent custody of M.W., J.W., Z.W., and A.W. to the Agency. Eboni now appeals.

## The Trial Court Did Not Err When It Terminated Eboni's Parental Rights

**{¶13}** In her first assignment of error, Eboni argues that the trial court erred by finding that her youngest child could not and should not be returned to her within a reasonable amount of time, and Eboni points to her recent case-plan progress in support of that view. Eboni contends in her second assignment of error that the trial court improperly determined that it was in the children's best interests to award permanent custody to the Agency.

**{¶14}** A trial court, according to R.C. 2151.414(B)(1), "may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency" and that any one of the five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. That statutory provision, in short, "establishes a two-pronged analysis." *Matter of K.H.*, 2025-Ohio-21, ¶ 30 (5th Dist.). "In practice, the trial court will usually determine whether one of the . . . circumstances delineated in R.C. 2151.414(B)(1)(a) through [(e)] is present before proceeding to a determination regarding the best interest of the child." *Id.*

**{¶15}** Clear and convincing evidence is evidence that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

A. <u>The Trial Court's Five-Factor Findings Are Supported by Clear and Convincing Evidence</u>

**{¶16}** R.C. 2151.414(B)(1) lists five scenarios, any one of which can serve as a prerequisite for a trial court's consideration of a permanent-custody request. "As long as one of these factors is present, then the first prong of the test is satisfied." *Matter of A.S.*, 2024-Ohio-2099, ¶ 36 (5th Dist.).

**{¶17}** In the cases involving the three older children, the trial court found that three of the five factors had been established: (1) under R.C. 2151.414(B)(1)(a), that the children could not or should not be placed with Eboni; (2) under R.C. 2151.414(B)(1)(b), that Eboni had abandoned the children; and (3) under R.C. 2151.414(B)(1)(d), that the children had been in the Agency's temporary custody for more than 12 months during a consecutive 22-month period. By contrast, in A.W.'s case, the trial court found that only R.C. 2151.414(B)(1)(a) — the could-not-or-should-not-be-placed factor — had been proven.

**{¶18}** Eboni concedes in her appellate brief that the trial court correctly determined under R.C. 2151.414(B)(1)(d) that the three older children, as of September 2025, had been in the Agency's temporary custody for more than 12 months during a

consecutive 22-month period, and her brief does not address the trial court's (B)(1)(b) finding that she had abandoned those older children.

{¶19} The record does in fact demonstrate that the older children were placed in the Agency's temporary custody in May 2024 and remained there through the September 2025 date of the permanent-custody hearing. Eboni acknowledges that, because a trial court need find that just one of the factors listed in R.C. 2151.414(B)(1) exists, the 12-of-22-months factor is dispositive in the three older children's cases even had the trial court erred in also finding that those three children could not and should not be returned to their mother. *See In re C.P.*, 2025-Ohio-5705, ¶ 9 (5th Dist.).

{¶20} Eboni does contend in her brief, though, that the trial court erred by finding that the could-not-or-should-not-be-placed factor from R.C. 2151.414(B)(1)(a) was met in A.W.'s case. That error is significant, she argues, because the trial court, in A.W.'s case, did not make any other R.C. 2151.414(B)(1) finding. Given that the 12-of-22-months factor from R.C. 2151.414(B)(1)(d) is not in dispute for the older children, and given that Eboni does dispute the existence of the first-prong finding in A.W.'s case, we will tailor our analysis accordingly.

{¶21} The one first-prong factor that the trial court found in A.W.'s case is, according to R.C. 2151.414(B)(1)(a), proven when a trial court finds that the "child is not abandoned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶22} To determine, under that statutory provision, whether a child cannot be placed with a parent, a court must look to R.C. 2151.414(E). That latter provision in turn lists 16 possible scenarios, any one of which can support a trial court's finding that a child cannot be placed with either parent. "The existence of one factor alone will support a

finding that the child cannot be placed with the parent within a reasonable time." *In re A.W.*, 2024-Ohio-5791, ¶ 19 (5th Dist.).

**{¶23}** The trial court in this case found that R.C. 2151.414(E)(1) was the factor supporting a finding that A.W. cannot be placed with her mother, and Eboni now challenges that determination. That statutory provision tells us that a child cannot be returned to a parent within a reasonable time when "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

**{¶24}** A court must, according to R.C. 2151.414(E), consider "all relevant evidence" when determining if a child cannot or should not be placed with a parent within a reasonable time period. *See In re J.G.S.*, 2019-Ohio-802, ¶ 27 (1st Dist.) ("Under R.C. 2151.414, the court is required to look at all relevant evidence, including a parent's pattern of conduct"); *In re Stephens*, 2002-Ohio-3057, ¶ 27 (7th Dist.) ("To further the interests of the children, the court must consider any evidence available to it, including a parent's pattern of conduct. Some of the most reliable evidence for the court to consider is the past history of the children and the parents.").

**{¶25}** A.W. was initially removed from Eboni's care in October 2024 after the Agency had received a report that — after Eboni had moved back to Ohio with A.W. in August 2024 — A.W. and Eboni were staying in the same house on Freedom Avenue from which the three older children had been removed. The Agency's investigation revealed that a registered sex offender was living in that house and that Eboni chose to reside there

with A.W. despite Eboni's knowledge of that person's status. Additional concerns of the Agency included Eboni's ability to parent her children in a safe manner, Eboni's mental health due to her own involvement with child-protective services as a child, and Eboni's ability to maintain stable employment.

{¶26} The initial case plan that was designed to address those concerns required Eboni to obtain stable housing, secure and maintain employment, and complete a parenting assessment so that the Agency could determine what other services were needed by Eboni to help her reunify with her children. The Agency's case worker testified that, to assist Eboni with her case-plan progress, that worker was willing to put together a case plan to connect Eboni with community resources, and the Agency was willing to cover the cost of any needed services. The case worker also offered to meet with the family monthly to address any concerns.

{¶27} Eboni was first ordered to complete her parenting evaluation at Summit Psychological Associates in February 2024 as part of her case plan to reunify with her three older children, but she did not complete that step because she and A.W. were living in Florida then. Eboni was again ordered by the court in October 2024 to complete the parenting assessment once A.W. had been removed from her mother's care.

{¶28} The Agency's case worker testified at the permanent-custody hearing that, despite the Agency's repeated admonitions to Eboni about the importance of completing that initial step in her case plan, Eboni had never done so. Summit Psychological ultimately refused to work with Eboni because she had missed too many appointments. Eboni was then referred to Lighthouse Family Counseling, and she missed her first appointment at that facility but rescheduled the appointment for a few days later. Though Eboni had attended two appointments at Lighthouse by the time of the permanent-

custody hearing, she still had not completed the evaluation by September 2025 even though she had been back in Ohio since August 2024.

{¶29} Eboni was also asked to participate in counseling to address the Agency's concerns about her mental health. Eboni had advised the Agency's case worker that she was a client at Keen Counseling, but that facility informed the Agency that in fact Eboni was not a patient there. Eboni never provided, despite the Agency's request, any contact information for her alleged therapist or a supervisor at Keen Counseling.

{¶30} The Agency's case worker did indicate that Eboni had secured satisfactory housing and employment by the time of the September 2025 hearing. The trial court noted in its judgment entry, though, that despite having "very recently" obtained stable housing by the time of the hearing, Eboni had lived in four different places in Ohio and at least one in Florida while her children's cases were open.

{¶31} Regarding Eboni's ability to parent in a safe manner, her visits with her children were described by the Agency's case worker as "chaotic." That person testified that, although Eboni offers redirection when her children are misbehaving, she often fails to follow through on that redirection. Eboni herself testified that she did not believe that her visits with the children should be wholly directed toward discipline despite also testifying that her children often curse, punch, and tackle each other during visits.

{¶32} We note, too, that the trial court had granted in April 2025 an extension of temporary custody in the three older children's cases with the goal of giving Eboni more time to complete her case-plan services. Eboni still failed to accomplish that task even after she was given extra time to do so. And while Eboni challenges the trial court's R.C. 2151.414(B)(1)(a) finding as it relates to A.W.'s case, the trial court was permitted to consider Eboni's "'past parenting history and her ability to comply with prior

reunification plans regarding her other children'" when making its decision on that could-not-or-should-not-be-placed factor in A.W.'s case. *In re M.W.*, 2020-Ohio-5199, ¶ 48 (10th Dist.), quoting *In re Brown*, 60 Ohio App.3d 136, 139 (1st Dist. 1989).

**{¶33}** After weighing all of these matters, we find clear and convincing evidence in the record to support the trial court's finding that Eboni failed to remedy the conditions causing A.W. to be placed outside her care. Despite her claim that she had made progress on her case plan and had engaged in services after A.W.'s removal, Eboni repeatedly failed to participate in the required parenting evaluation — the very first task that she was ordered to complete — and she was dishonest with the case worker about engaging in counseling services. The Agency's case worker opined that, considering the timeline, Eboni had made "limited progress" on her case plan.

**{¶34}** Eboni's first assignment of error is overruled.

B. <u>Granting Permanent Custody Is in the Children's Best Interest</u>

**{¶35}** In determining whether granting permanent custody of a child to an agency is in that child's best interest, the trial court must consider all relevant factors, including, but not limited to, the ones listed in R.C. 2151.414(D)(1). Those statutory factors include the child's interactions and relationships with the child's family members and persons who may significantly affect the child, the wishes of the child (with due regard to the maturity of the child), the custodial history of the child, and the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. R.C. 2151.414(D)(1)(e) also directs a court to consider whether any of the factors delineated in R.C. 2151.414(E)(7) through (11) are applicable, including whether the parent has abandoned the child.

**{¶36}** While the trial court must consider all of the factors in R.C. 2151.414(D)(1), the court is required to consider, too, any other evidence available to it when deciding whether permanent custody is in a child's best interest. *In re Schaefer*, 2006-Ohio-5513, ¶ 56 ("The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors"); *In re Stephens*, 2002-Ohio-3057, at ¶ 27 (7th Dist.) ("To further the interests of the children, the court must consider any evidence available to it" when "determining whether permanent custody is in the children's best interests").

**{¶37}** R.C. 2151.414(D)(1) does not require a trial court to make specific findings on each factor listed in that provision, nor does it require the court to include in its judgment entry a written discussion of each factor. *In re A.M.*, 2020-Ohio-5102, ¶ 31, 33 ("Consideration [of the factors] is all the statute requires").

**{¶38}** "A child's best interests are served" when the child is placed in a permanent situation that "fosters growth, stability, and security." *In re M.K.*, 2023-Ohio-3786, ¶ 36 (5th Dist.). "'The discretion'" that the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Id.*, quoting *In re E.H.*, 2022-Ohio-1682, ¶ 101 (5th Dist.).

**{¶39}** Clear and convincing evidence supported the trial court's conclusion that the four children's best interests would be served by granting permanent custody to the Agency. According to the case worker's testimony, there exists only a "small bond" between Eboni and her four children, and the children do not cry or have trouble separating from their mother at the end of their visits.

**{¶40}** M.W. and J.W. are currently placed together with a foster family, while A.W. and Z.W. are each placed with a separate family. The four children are bonded to each other, and all four of the children are bonded to the people in their current homes. And although A.W.'s and Z.W.'s placements are not willing to adopt them, the family with whom the other two children — M.W. and J.W. — are placed is willing to consider adopting all four of the children.

**{¶41}** As mentioned above, the three older children had been in the Agency's temporary custody for more than 12 months of the 22-month period preceding the permanent-custody hearing. The trial court also heard testimony that Eboni had gone from February 2024 until October 2024 without visiting or contacting her children. While Eboni testified that she came back to Ohio in August 2024 "to fight for [her] kids," Eboni did not begin visiting with her older children until October 2024. Under R.C. 2151.011(C), Eboni abandoned her three older children when she failed to visit or maintain contact with them between February 2024 and October 2024, a period well in excess of the 90-day timeframe set forth in that statutory provision.

**{¶42}** A "legally secure permanent placement" has generally been understood by courts to mean "a safe, stable, [and] consistent environment where a child's needs will be met." *In re M.B.*, 2016-Ohio-793, ¶ 56 (4th Dist.). The Agency's case worker testified that M.W. and J.W. have neurological concerns and that the caretaker in their current placement is ensuring that both of those children are receiving the medical attention that they need. M.W. has already completed physical therapy and is in the process of completing occupational therapy. J.W. had been referred to a specialist, and J.W.'s foster mother is working to make sure that J.W. is attending medical appointments.

{¶43} The testimony presented at the hearing bears out the Agency's concerns about the behavior of the three older children. The case worker testified that those children are working with a behavioral interventionist and that they are receiving therapy services to address those issues. It appears from the hearing testimony that Eboni was unable, on her own, to correct her children's poor behavior during the two-hour visits in which she participated with her children every two weeks. Eboni also testified that she was late to her visits approximately 15 to 20 times due to transportation issues.

{¶44} The trial court also heard testimony that Eboni had moved back and forth between Florida and Ohio multiple times and that she had lived in at least four different places in Ohio during the pendency of the three older children's cases. When Eboni moved back to Ohio in August 2024, Eboni chose to reside in the home on Freedom Avenue that the children's father had deemed unsafe for the children. Eboni allowed A.W. to reside in that home despite Eboni's knowledge that a registered sex offender lived there. The trial court noted, too, that M.W., when no more than three years old, was found walking alone outdoors in Florida in 2022 while she was there with Eboni.

{¶45} Eboni argues in her appellate brief that the trial court should have given more consideration to placing the children with Eboni's brother. Eboni had suggested to the Agency in June 2025 that her brother was willing to take custody of the four children, and at that time, Eboni told the Agency that her brother lived alone. Though the timing is not clear from the record, the Agency later learned from Eboni that she had moved in with her brother, and Eboni was informed that the Agency could not consider him for placement if Eboni lived in that house too. The case worker testified that, though the Agency had later received a lease from Eboni showing that her brother was then living alone, the Agency had concerns for the authenticity and legitimacy of that lease. The trial

court noted in its permanent-custody judgment entry that Eboni's brother was on probation for an unrelated criminal matter at the time of the hearing.

{¶46} Further, R.C. 2151.414(D) "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor," nor does that statute "even require the trial court to weigh that factor more heavily than others." *In re H.D.*, 2025-Ohio-2440, ¶ 44 (5th Dist.). Both the Agency's case worker and the children's guardian ad litem opined that granting permanent custody of the children to the Agency was in the best interests of the four children.

{¶47} The best-interest factors weigh in favor of the trial court's decision to grant permanent custody of M.W., J.W., Z.W., and A.W. to the Agency. Because both prongs of the permanent-custody test have been shown in this case, we find that the trial court properly terminated Eboni's parental rights and appropriately placed the four children in the permanent custody of the Agency. Eboni's second assignment of error is overruled.

{¶48} For the reasons explained above, the judgment of the Family Court Division of the Court of Common Pleas of Stark County is affirmed. Costs are to be paid by Appellant Eboni G.

By: Gormley, J.;

Baldwin, P.J. and

Montgomery, J. concur.